## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

COSTAMAR TRAVEL CRUISE & TOURS, INC.,

     Plaintiff,

     v.

NYDIA PENA & GEORGE CLAVIJO,

     Defendants.

Civil Action No. 23-3995 (RK) (TJB)

<u>**MEMORANDUM OPINION**</u>

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court upon Plaintiff Costamar Travel Cruise & Tours, Inc.'s ("Plaintiff") Motion for Default Judgment against Defendants Nydia Pena ("Pena") and George Clavijo ("Clavijo," together, "Defendants").[1] (ECF No. 8.) The Court has considered Plaintiff's Motion and its accompanying submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is **DENIED** without prejudice.

## I.    <u>BACKGROUND</u>

     Plaintiff is a New Jersey corporation with a business office and principal place of business in Elizabeth, New Jersey, and an additional place of business in Fort Lauderdale, Florida. ("Compl.," ECF No.1, at ¶ 7.) Pena is an individual residing in Freehold, New Jersey, with a business office and principal place of business in Doral, Florida. (*Id.* ¶ 8.) Clavijo is an individual residing in Brick, New Jersey. (*Id.* ¶ 9.) Plaintiff employed Pena throughout the 1990s and placed

---

[1] Plaintiff also submitted an Affidavit in Support of its Motion, (ECF No. 11), and an Affidavit of Service, (ECF No. 12).

her in its Freehold office in 1996. (*Id.* ¶ 16.) In 1999, Plaintiff gave "verbal permission" for Pena to manage her own travel agency and advertise as an agent of "Costamar Travel." (*Id.* ¶ 17.) A condition of advertising herself as an agent of Costamar Travel was that Pena "exclusively purchase[] travel products solely from Plaintiff." (*Id.*) Plaintiff alleges this agreement was a "joint venture" between Plaintiff and Pena, rather than a franchise agreement.[2] (*Id.*) Under this verbal joint venture agreement, Pena was to receive eighty percent (80%) of the profits from any travel packages sold for Costamar, and Plaintiff would receive the remaining twenty percent (20%) of profits. (*Id.*)

Pena opened and operated three locations of her travel agency—all in New Jersey. (*Id.* ¶ 18.) Throughout the course of the joint venture, Plaintiff alleges Pena was "continuously in open breach" because Plaintiff was not paid the 20% of Pena's earnings for packages sold as an agent of Costamar Travel. (*Id.* ¶ 28.) Further, Plaintiff alleges it became aware in March 2012 that Pena was purchasing products from competitors, particularly the company "Florida Best," instead of purchasing products from Plaintiff. (*Id.* ¶ 19.) Pena allegedly engaged in this behavior "while trading on Costamar's name and intellectual property and benefiting from its advertising efforts." (*Id.*) Plaintiff asserts "[i]t was at this time . . . that Plaintiff declared [Pena] in breach and unilaterally terminated [Pena]'s rights to continue as a joint venture partner and an authorized agent of Costamar." (*Id.*)

After a series of conversations between Plaintiff and Pena in early March 2012, (*see id.* ¶¶ 20–22), Plaintiff issued a cease-and-desist letter to Pena "advising that the use of the name

---

[2] The Court notes that in the Affidavit in Support Plaintiff submitted to the Court to substantiate its damages, Gabriel Concas ("Concas"), one of Plaintiff's principles, refers to Pena's Freehold agency, Costamar Freehold, as "an authorized Franchisee." Further, Concas refers to commissions from Costamar Freehold as "franchisee commissions" and bases Plaintiff's projected actual damages, in part, on its assessment of "total lost franchisee commissions." (ECF No. 11 at 1–3.)

Costamar should immediately stop, and that any authority previously given to act as an agent for Costamar was terminated effective immediately." (*Id.* ¶ 23.) Plaintiff alleges that Pena has ignored the cease-and-desist letter, and has continued to operate her three travel agency locations while using Plaintiff's name and logo. (*Id.* ¶ 24.) Plaintiff further alleges Pena has not removed signage at the three travel agency locations that use Plaintiff's trademarked name and logo, Pena continues to use Plaintiff's name and logo on business cards, and Pena continues to hold herself out as an owner of Costamar Travel of Freehold. (*Id.* ¶¶ 25–26.)

Clavijo is Pena's husband. (*Id.* ¶ 31.) Plaintiff alleges that Clavijo opened a New Jersey business in August 2012 named "Costa Y Mar Services." (*Id.* ¶ 27.) Plaintiff asserts that the business' name is "phonetically identical to Plaintiff's trademarked name" and that this was "in order to mislead the public and to capitalize on Plaintiff's extensive advertising spend." (*Id.*) Plaintiff separately alleges Clavijo "aided and abetted" Pena's infringing activities. (*Id.* ¶ 31.)

Plaintiffs' Complaint, filed on July 26, 2023, alleges five counts against both Defendants: trademark infringement under the Lanham Act, Section 43(a), 15 U.S.C. §§ 1114 & 1125(a), (*id.* ¶¶ 32–48); trademark dilution under the Lanham Act, Section 43(c), 15 U.S.C. § 1125(c), (*id.* ¶¶ 49–59); trademark infringement under New Jersey's trademark infringement statute, N.J.S.A. 56:3-13.16, (*id.* ¶¶ 60–65); unprivileged imitation and unfair competition under New Jersey's unfair competition statute, N.J.S.A. 56:4-1, (*id.* ¶¶ 66–71); and common law trademark infringement and unfair competition, (*id.* ¶¶ 72–82). Plaintiff seeks relief in the form of statutory damages under the Lanham Act, 15 U.S.C. §§ 1116 & 1118 in the amount of $300,000 per Defendant, attorney's fees, and a permanent injunction against both Defendants prohibiting them from selling products containing Plaintiff's protected trademarks. (Compl. ¶¶ 32–82; "Pl. Br.," ECF No. 8-1, at 1, 20.)

The Complaint lists Pena's address as 52 Throckmorton Street, Freehold, New Jersey 07728. (Compl. ¶ 8.) On August 30, 2023, Plaintiff filed a Proof of Service from a process server stating that the summons was served on August 28, 2023. (ECF No. 4; ECF No. 6-1 ¶ 4.) The Proof of Service states the process server personally delivered the summons to an individual identifying herself as Nydia Pena. (ECF No. 4.) The Complaint lists Clavijo's address as 2791 Hooper Avenue, Brick, New Jersey. (Compl. ¶ 9.) On August 30, 2023, Plaintiff filed a Proof of Service from a process server stating the summons was served on August 28, 2023. (ECF No. 5; ECF No. 6-1 ¶ 10.) The Proof of Service states the process server personally delivered the summons to an individual identifying himself as George Clavijo. (ECF No. 5.)

Neither Defendant nor counsel for either Defendant ever entered an appearance in this matter. Plaintiff sought an entry of default against both Defendants on November 28, 2023. (*See* ECF No. 6.) On or about the next day, the Clerk of the Court entered an Entry of Default against both Defendants. Plaintiff then filed the pending Motion for Default Judgment. (ECF No. 8.) Plaintiff's Motion is accompanied by a Brief in Support of the Motion, (Pl. Br.), as well as a declaration from John P. Fazzio, Esq., (ECF No. 8-2), and an Affidavit in Support of the Motion, (ECF No. 11).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the Court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits . . . .'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Because the entry of a default judgment prevents the

resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'" *Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Before entering default judgment, "a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages." *Days Inns Worldwide, Inc. v. T.J. LLC*, No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (internal citations omitted). In addition, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (internal citations omitted).

## **DISCUSSION**

### A.    **SERVICE AND JURISDICTION**

The Court begins with the question of whether Defendants were properly served in this matter. A court may only enter default judgment against defendants who were properly served with process. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). Plaintiff "bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (2d ed. 1987)). Plaintiff can meet this burden "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019). Federal Rule of Civil Procedure 4 lays

out how a defendant may be served with process. An individual within a judicial district of the United States may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Plaintiff adequately served both Defendants with process here, as each was personally served. (ECF Nos. 4, 5, 6-1 ¶¶ 5, 11.) Since being served, neither Defendant has filed an appearance, answered the Complaint, or otherwise engaged in this litigation. Thus, the threshold inquiry for entering default judgment is satisfied here. *See Loc. 365 Pension Fund*, No. 20-10536, 2021 WL 1976700, at *3 (citing *Gold Kist, Inc.*, 756 F.2d at 18–19).

Next, the Court will address its jurisdiction over this matter and the Defendants. "Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *2 (D.N.J. Sept. 28, 2023) (citations omitted).

Here, the Court has subject matter jurisdiction over all counts of the Complaint. Counts One and Two allege violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125. The Court's subject matter jurisdiction over such federal trademark claims is well established. *See* 28 U.S.C. §§ 1331, 1338(a); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."). Because Plaintiff's New Jersey and common law claims arise from the same case or controversy as the federal trademark claims, the Court may exercise supplemental jurisdiction over those claims as well. 28 U.S.C. § 1367; *see also Crocs, Inc. v. Dr. Leonard's Healthcare Corp.*, No. 21-13583, 2022 WL 3754858, at *2 (D.N.J. Aug. 30, 2022) (finding subject matter jurisdiction in trademark infringement case "because the complaint asserts federal trademark claims . . . and related state

law claims over which the Court may exercise supplemental jurisdiction"); *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp*, No. 20-9537, 2021 WL 1541054, at *3 (D.N.J. Apr. 20, 2021) (same).

Further, the Court finds it has personal jurisdiction over Defendants, who are both alleged to be New Jersey residents. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (noting that an individual's "domicile" is "the paradigm forum for the exercise of general jurisdiction").

## B.    SUFFICIENCY OF COMPLAINT

Before entering default judgment, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (quoting *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)); *see also Animal Science Prods., Inc. v. China Nat'l Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) ("[A] litigant's failure to state a claim upon which relief may be granted . . . prevents the presiding court from entering a default judgment."). Similar to what is required of a complaint to survive a motion to dismiss for failure to state a claim, a plaintiff must "establish[] that the essential elements of the pleaded claims are present and state[] factual allegations in support of these elements." *Animal Science Prods., Inc.*, 596 F. Supp. 2d at 849.

### 1.  Timeliness

The Court must generally take all facts as alleged by Plaintiff as true. *See Directv, Inc.*, 2006 WL 680533, at *1 ("A defendant is deemed to have admitted the factual allegations of the Complaint by virtue of his default, except those factual allegations related to the amount of damages"). In this case, the facts as alleged raise an issue of timeliness and a question of delay in

filing, as Plaintiff alleges actual knowledge of Defendants' continued use of Plaintiff's trademark as early as March 2012, when Plaintiff alleges it unilaterally terminated the joint venture between the parties. (Compl. ¶ 23.)

In Counts One through Three, Plaintiff alleges claims against Defendants based on violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and the New Jersey trademark statute, N.J.S.A. 56:3-13.16. (*Id.* ¶¶ 32–65.) Although the Lanham Act does not contain an explicit statute of limitations, it "subjects all claims to 'the principles of equity,' such as laches." *Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) ("*Kars 4 Kids I*") (quoting *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005)); *see also* 15 U.S.C. § 1117(a).

Laches is an equitable doctrine within the "sound discretion" of the district judge. *Univ. of Pittsburgh v. Champion Prod. Inc.*, 686 F.2d 1040, 1045 (3d Cir. 1982). However, a district court facing the issue of laches must engage in a prejudice analysis and hold a plaintiff to its burden to establish that its delay in bringing suit was excusable. *See, e.g., Kars 4 Kids II*, 98 F. 4th at 444 (finding an abuse of discretion where the district court improperly circumvented a prejudice analysis and failed to hold the plaintiff to its burden); *see also Santana Prods.*, 401 F.3d at 138 ("We conclude that the District Court erred because it did not use the appropriate legal standard to assess [defendant's] laches defense.") To determine whether laches bars a claim, the Court must "consider two elements: (1) the plaintiff's 'inexcusable delay in bringing suit,' and (2) 'prejudice to the defendant as a result of the delay.'" *Kars 4 Kids Inc.*, 8 F.4th at 220 (quoting *Santana Prods.*, 401 F.3d at 138).

Further, to determine which party in a suit bears the burden of proof for a laches claim, courts determine the "most analogous statute of limitation as a guideline" and "then consider

whether that period has expired." *Id.* (internal citations omitted); *see also Kars 4 Kids Inc. v. Am. Can!*, 98 F.4th 436, 444 (3d Cir. 2024) ("*Kars 4 Kids II*") (same). If the period has expired, the defendant "'enjoys the benefit of a presumption of inexcusable delay and prejudice'" and the plaintiff "'carrie[s] the burden of proving that its delay was excusable and that [the delay] did not prejudice [the defendant].'" *Kars 4 Kids I*, 8 F.4th at 221 (alterations in original) (quoting *Santana Prods.*, 401 F.3d at 138–139); *see also Kars 4 Kids II*, 98 F. 4th at 444 (same).

In New Jersey, "[c]laims under the Lanham Act are properly analogized to New Jersey's six year fraud statute." *Kars 4 Kids I*, 8 F.4th at 221 (quoting *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012)); *see also Kars 4 Kids II*, 98 F.4th at 444 (same). Plaintiff alleges it terminated the joint venture relationship with Pena in March 2012 by sending her a cease-and-desist letter demanding she stop using its trademark. (Compl. ¶ 23.) When determining timeliness under the Lanham Act, "[a] plaintiff is not obligated to sue until it knows or should know that the defendant's conduct constitutes trademark infringement." *Kars 4 Kids I*, 8 F.4th at 221 (collecting cases); *see also Kars 4 Kids II*, 98 F.4th at 445 (same). Courts examine delay based upon whether a reasonable person in the defendant's shoes would have waited to file suit. *See Kars 4 Kids I*, 8 F.4th at 222 (citing *Claussen v. Mene Grande Oil Co.*, 275 F.2d 108, 111 (3d Cir. 1960)).

Plaintiff acknowledges Pena continuously used Plaintiff's trademarked name and logo from when Plaintiff terminated the joint venture in March 2012 through the filing of the Complaint in July 2023. (Comp. ¶¶ 24–30.) Based on Plaintiff's rendition of events, it had actual knowledge that Pena continued to operate her three travel agencies using Plaintiff's name and logo, had not taken down the signage that included Plaintiff's trademarked name and logo, and continued to hold herself out as Plaintiff's agent. (*Id.* ¶¶24–26.) Given the decade that passed between Plaintiff sending the cease-and-desist letter and filing this action, Pena may reasonably have assumed

Plaintiff had "dropped the matter and did not object to Defendant's name." *First Keystone Fed. Sav. Bank v. First Keystone Mortg., Inc.*, 923 F. Supp. 693, 701 (E.D. Pa. 1996).

Plaintiff's claims against Clavijo are similarly untimely, as the Complaint alleges Clavijo opened "Costa Y Mar Services" in August 2012 and has continuously "capitalize[d] on Plaintiff's extensive advertising spend." (*Id.* ¶ 27.) Plaintiff does not address the timeliness issue in its briefing or explain why it waited over a decade to file suit against Defendants. (*See generally* Compl.; *see generally* Pl. Br.) As alleged, Defendants have run their businesses with no move by Plaintiff towards litigation from 2012 to 2023. (*See generally* Compl.) Plaintiff does not allege any activities that happened after 2012 which prompted Plaintiff to file in 2023, or discuss why it waited so many years to do so. *See, e.g., Univ. of Pittsburgh*, 686 F.2d at 1045–46 (3d Cir. 1982) (finding plaintiff not guilty of laches where it acted promptly after discovering that "the character and scope of the alleged infringement [had] changed substantially over the years," from "modest" sales to the local community to "national sales.")

In considering a motion for the entry of default judgment, a court must consider whether the allegations set forth in the complaint give rise to a "legitimate cause of action." *Acosta v. Faraones Nightclub*, No. 18-17710, 2023 WL 4946960, at *3 (D.N.J. Aug. 3, 2023) (quoting *Chanel, Inc.*, 558 F. Supp. 2d at 536). Default judgment is only appropriate when "the plaintiff's factual allegations establish a right to the requested relief." *Wong v. Am. Credit & Collections, LLC*, No. 11-04428, 2012 WL 5986474, at *1 (D.N.J. Nov. 28, 2012) (quoting *E. Const. & Elec., Inc. v. Universe Techs., Inc.*, No. 10-1238, 2011 WL 53185, at *3 (D.N.J. Jan. 6, 2011)). However, default judgment itself is not a right. *See Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *2 (D.N.J. June 14, 2010) (citing *Franklin v. Nat'l Mar. Union of Am.*, No. 91-480, 1991 WL 131182, at *1–2 (D.N.J. July 16, 1991)).

Because "[d]efault judgments do not provide for ideal adversarial proceedings . . . they can sometimes 'overcome the presumption that parties are responsible for raising their own defenses.'" *Delloye v. Revolutionary Armed Forces of Colombia*, No. 18-01307, 2021 WL 5757341, at *1 (M.D. Pa. Aug. 11, 2021) (quoting *De Santis v. City of New York*, No. 10-3508, 2014 WL 228659, at *5 (S.D.N.Y. Jan. 22, 2014)); *see also United States v. Mitchell*, 518 F.3d 740, 746 (10th Cir. 2008). Here, the Court will not grant default judgment against Defendants on claims where Plaintiff has not addressed the timeliness issue or its delay, and where it is a "glaring possibly litigable defense." *Delloye*, 2021 WL 5757341, at *1. Further, the Court would need to assess Plaintiff's reason for delay in its analysis as to whether Plaintiff would suffer prejudice if subject to further delay in this action. *See Pharmacia Corp. v. Alcon Lab'ys, Inc.*, 201 F. Supp. 2d 335, 382 (D.N.J. 2002) (finding a party's "lengthy" delay in bringing an action undercut a party's claim for harm). The Court will not grant default judgment on Counts I and II under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c), and Count III under the New Jersey trademark statute, N.J.S.A. 56:3-13.16. *See Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 612 (D.N.J. 2007) (finding analysis for New Jersey statutory trademark claims is the same as under the Lanham Act); *see also Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.*, No. 99-280, 1999 WL 707721, at *4 (D.N.J. Sept. 13, 1999) (same).

The Court will also not grant default judgment on Count IV under the New Jersey unfair competition statute, N.J.S.A. 56:4-1, and Count V under New Jersey common law, as these Counts are interpreted by courts to be subject to the New Jersey six-year statute of limitations for tortious injury to the rights of another. N.J.S.A. § 2A:14-1 ("Every action at law . . . for any tortious injury to the rights of another not stated in N.J.S.2A:14-2 and N.J.S.2A:14-3 . . . shall be commenced within six years next after the cause of any such action shall have accrued."); *see also DeWulf v.*

*Blatt Billiard Corp.*, No. 22-0485, 2023 WL 3199192, at *6 (D.N.J. May 2, 2023) (finding state

law claims for unfair competition and trademark infringement brought under N.J.S.A. § 56:4-1

and New Jersey common law are subject to New Jersey's six-year statute of limitations). A cause

of action "'accrues' when 'all of its elements have come into existence such that an omniscient

plaintiff could prove them in court.'" *DeWulf*, 2023 WL 3199192 at *6 (quoting *William A.*

*Graham Co. v. Haughey*, 646 F.3d 138, 146 (3d Cir. 2011)).[3] As described above, Plaintiff had

actual knowledge of Defendants' misconduct as far back as 2012 but did not file this action until

2023.

---

[3]As the Court has declined to grant this Motion for Default Judgment based on the issue of timeliness and delay, the Court does not fully reach the question of whether Plaintiff sufficiently pled the elements of each of its claims. However, as a general matter, the Court notes that the Complaint devotes almost no explanation to Plaintiff's claims against Clavijo and his relation to the trademark infringement Plaintiff asserts. (*See generally* Compl.) Plaintiff alleges Clavijo "aided and abetted" Pena in her infringement and improper use of Plaintiff's trademark and name, but does not specify in what ways he did so or any actions on his part other than that he opened a company with a similar name to that of Plaintiff. (Compl. ¶ 27.) Further, Plaintiff does not assert any basis for its claim that "Costa Y Mar Services" is a violation of Plaintiff's trademarked name, particularly given that the Spanish words for "coast" and "sea" frequently appear together, the names are objectively not phonetically identical, and Plaintiff has not alleged any actions on Clavijo's part showing he traded on Plaintiff's name and advertising. *Am. Home Mortg. Corp. v. Am. Home Mortg. Corp.*, 814 A.2d 1165, 1169 (N.J. Super. App. Div. 2003) ("[M]ere confusion is insufficient to support an injunction based on a claim of unfair competition or trade name infringement.")

III.    **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Default Judgment is **DENIED**

without prejudice. An appropriate Order accompanies this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 4, 2024