**FAZZIO LAW OFFICES**
John P. Fazzio, Esq. (JF1752)
305 Broadway, 7th Flr, Ste. 19
New York, NY 10007
Tel: (201) 529-8024
Fax: (201) 529-8011
*Attorneys for Plaintiffs,*
*Costamar Travel Cruise & Tours, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COSTAMAR TRAVEL CRUISE & TOURS, INC.<br><br>Plaintiff,<br><br>v.<br><br>NYDIA PENA and GEORGE CLAVIJO,<br><br>Defendants. | No. 3:23-cv-3995<br><br>**DECLARATION OF GABRIEL CONCAS IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

GABRIEL CONCAS, pursuant to 28 U.S.C. § 1476, declares as follows:

1. I am one of the principals of the Plaintiff, Costamar Travel Cruise & Tours, Inc.

2. I would emphasize and second my father's comments in his Declaration about the Company's reputation. Costamar is not only a mark know for value in the marketplace—but also a representation of our family values and our collective passion for travel.

3. Growing up in the business, I can tell you that the "Costamar" name is not only a reflection of my father's life's work, but it is also the fruit of the collective devotion of many dedicated employees, affiliates, partners, and loyal customers—all of whom have jointly helped for many years to craft the business into what it is today—a reliable place to go—and a name you can count on—for all of your travel needs.

4.  No other Latin American travel company has put in the time and devoted the resources to develop a reputation synonymous with excellence like we have. We only want to protect the hard-fought reputation that we have so painstakingly built over a lifetime of hard work.

5.  For me, personally, it is an affront to my father's hard work that these Defendants, particularly being individuals that we used to work with and support, are trading on our Company's reputation and its goodwill in the marketplace, and in doing so, diminishing our brand, while earning profits off of our name, which they have not rightfully earned the right to enjoy.

6.  Our main objective, and our primary concern, is to obtain an injunction and prevent any future infringement by this group.

7.  Going forward, we hope to use this as an example, and to diligently address any infringement issues as they arise, putting everyone on notice that we will not permit unauthorized use of our name, our logo, our trademark, and our goodwill—particularly where this infringement arises out of lies, deceit, and subterfuge.

8.  My father worked too hard, for too long, and so many others did as well, to see our collective work and the hard-fought reputation for quality and exceptional service we've established diminished, and to also see our marketing dollars diverted to those who do not share our values and who are funneling customers we've attracted to our competitors, who do not place the same premium on delivering exceptional service and value.

### Additional Background on Costamar's Efforts to Enforce its Intellectual Property Rights

9.  As previously certified to the Court, in prior submissions, my father, Gerardo Concas, issued a Cease and Desist letter to the defendants on March 20, 2012, in which they were given thirty (30) days to stop using our trademarked name. No objection was made to said letter.

The only comment was that given the longstanding business relationship, Ms. Pena felt that it was abrupt. But she did not voice any objection to ceasing the use of the "Costamar" name.

10. In fact, as my father attests in his certification, Ms. Pena both put in writing that she was not offering travel services any longer because she was more dedicated to tax preparation, and then verbally told my father directly that she was getting out of the business.

11. Ms. Pena's actions show that she intended to deceive my father and lull him into a false sense of confidence that the infringement had stopped, only to continue the infringement, in secret, once the matter had quieted down.

12. Also, as noted in my father's Declaration, he has suffered a series of medical challenges and been through countless operations for cancer, heart problems, and is now on the waiting list for a kidney transplant.

13. I have recently been by my father's side and have been interfacing with doctors on his behalf, as my sister and I have done over the course of the last decade, since the facts giving rise to this litigation started. From all of this time caring for my father's medical needs, I can tell you that he has been fighting for survival, and focused on dire business matters, and neither my father, nor myself, nor my sister received any reports that alerted us to the continued infringement until 2023—shortly after which, we hired a lawyer and sought to enforce our rights.

14. Moreover, I'd like to highlight the fact that while my father was in ill-health, and was the one who had the relationship with Defendants Pena and Clavijo, the fact that the purchases between 2014—when monitoring of Pena's and Clavijo's activities ceased, and 2023, when we discovered they were still engaging in infringement—were all done by booking with other systems, to which we have no access, making it difficult, if not impossible, to monitor or detect these purchases, and therefore, giving us no reason to be on notice of a problem and to look for an office

in South Jersey that was using the "Costamar" name without authorization. In retrospect, perhaps we could do periodic scans to see if anyone is using our name, but we had no notice that there was ongoing infringement, and therefore, had no reason to conduct any such search until 2023.

### Discovery of Continued Infringement Upon Taking Over Ownership & Management of Costamar

15. Shortly after my sister and I gained partial ownership of Costamar Travel Cruise & Tours, Inc., about two (2) years later, on May 23, 2023, we were notified that the Defendants had not only not continued to use our trademarked name but had fabricated a lie that they had purchased the franchise a long time ago. It was also revealed that the Defendants were using the trademarked name to buy tickets through a competitor called "Florida Best," while still generating leads online and in-person through false advertising, by holding themselves out as an affiliate office or franchise location for "Costamar Travel."

16. Upon doing a "GoogleMaps" search, it was evident that the Defendants had continued to use our trademarked name, design and font on signage at their business locations after being issued the Cease and Desist letter in 2012.






 

Exhibit A hereto is a true and accurate copy of these Google Maps Images.

17.     Even in spite of registering "Costa y Mar Services" in 2013, they continued to use our trademarked name, logo, signage, and trademark at their locations to hold themselves out to the public as "Costamar Travel."

18.     Immediately after being notified that the Defendants were acting in bad faith, I commenced legal action and since doing so, there has been no delay on my part in pursuing justice for their wrongful actions.

19.     You will note, from the most recent Google Images, that upon receiving our Complaint and Notice of Default Judgment in 2024, the signage was temporarily removed and replaced with that of a less well known competitor travel agency.



Exhibit B hereto is a true and accurate copy of these Google Maps Images.

20.     Their continued use of our trademarked name is not only trademark infringement but has caused, and continues to cause, confusion amongst our clientele. The phone numbers that Ms. Pena and Mr. Clavijo use at each of their three (3) locations are currently listed as Costamar Travel in their Google Listings—and those numbers should either be prohibited from being used as associated with Costamar Travel—or the Court should order that they be re-directed to our call

center, since those calls our based on our advertising and the Defendants misleading attempt to hold themselves out as being Costamar Travel.





Exhibit C hereto is a true and accurate copy of these Google Maps Images.

21. I submit this certification in support of the Motion for Default Judgment and attorneys' fees to provide evidence and support for the fact that the $300,000 is far less than the projected actual damages expected to have been incurred, even assuming that the violation of our trademark was restricted to a single location and was not going on at all three (3) locations, as we believe to be the case.

22. More importantly, as my father had said, his legacy is the Costamar business we have built together, based, primarily, on a reputation of passionately serving our customers and giving them fair value for their money. Above all, we do not want to see our good name drug through the mud by individuals who do not share our character and values, and who might cause our customers to have a bad experience. Above all else, we just want an injunction to stop any further wrongful use of the name "Costamar Travel" that we have worked so hard to ensure is synonymous with our own family values.

I declare under penalty of perjury that the foregoing is true and accurate. Executed on February 28, 2024.

Fort Lauderdale, FL.

GABRIEL CONCAS